## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

FOJ GROUP, LLC,                          )
                                         )
             **Plaintiff,**          )
                                         )
v.                                       )     Case No.  15-CV-658-TCK-TLW
                                         )
VENTURE AVIATOR, INC.,                   )
                                         )
                                         )
             **Defendant.**          )

## OPINION AND ORDER

Before the Court is the Amended Motion to Dismiss for Lack of Personal Jurisdiction filed

by Defendant Venture Aviator, Inc. ("Venture") brought pursuant to Federal Rule of Civil Procedure

12(b)(2).

### I.    Rule 12(b)(2) Standard

Rule 12(b)(2) governs motions to dismiss for lack of personal jurisdiction.  A plaintiff bears

the burden of establishing a court's personal jurisdiction over a defendant.  *OMI Holdings, Inc. v.*

*Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998).  Where, as here, neither party has

requested an evidentiary hearing or additional discovery, a plaintiff need only make a prima facie

showing of personal jurisdiction to defeat a defendant's motion to dismiss.  *Id.*  "The plaintiff may

make this prima facie showing by demonstrating, via affidavit or other written materials, facts that

if true would support jurisdiction over the defendant."  *Id.*  "In order to defeat a plaintiff's prima

facie showing of jurisdiction, a defendant must present a compelling case demonstrating that the

presence of some other considerations would render jurisdiction unreasonable."  *Id.*  Any factual

disputes arising are resolved in the plaintiff's favor.  *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1100

(10th Cir. 2009).

## II.    Facts

Plaintiff FOJ Group, LLC ("FOJ") is an Oklahoma start-up social media company with its

principal place of business in Tulsa, Oklahoma.  Venture is a Delaware corporation specializing in

information technology development and business strategy consulting.  Venture is based in

California and New York.

FOJ representatives first met Venture representatives at the South by Southwest conference

in Austin, Texas, in March of 2014.  Following the conference, Venture President Roy Malkin

("Malkin"), who lives and works in New York, began corresponding via LinkedIn with FOJ

founding member Andrew Naugher ("Naugher"), who lives and works in Oklahoma.  Soon

thereafter, Malkin and Venture Chief Executive Officer Don Oparah ("Oparah"), who works in

California, spoke by telephone with Naugher and another FOJ representative regarding Venture

developing a social media website for FOJ.  FOJ had specific needs and requirements for its website,

including the ability to support a large number of users.

In late summer of 2014, FOJ hired Venture to develop its website.  Oparah drafted the

Master Services Agreement ("MSA") and related Statement of Work #1 and sent both via email to

FOJ.[1]  The MSA provides that it shall be deemed executed in California and governed by California

law.  The MSA has the following forum selection clause: "[T]he CUSTOMER agrees to submit to

---

[1] The parties submitted two different versions of the MSA as evidence.  FOJ's proferred
version is dated August 26, 2014, has a blank signature line for Naugher, and is signed by
Oparah.  Venture's proferred version is dated September 4, 2014, has a blank signature line for
Oparah, and is signed by Louise Short.  These discrepancies are not relevant to the jurisdictional
questions presented, and the Court assumes for purposes of this motion the parties have a valid
contract executed in late fall of 2014.

the venue and jurisdiction of the courts of the state of California and of the United States in disputes

concerning this Agreement." (Am. Mot. to Dismiss, Ex. A, at ¶ 7.5.)

Sometime around October of 2014, Naugher concluded Venture would not complete the

website by the date agreed upon in the MSA and began working with Venture to amend the timeline

and scope of work. In March of 2015, FOJ paid for Venture representatives to attend the South by

Southwest conference in Austin to assist FOJ in promoting its social media website. In April of

2015, it became apparent to Naugher that Venture could not provide a website that met FOJ's

specifications, and FOJ terminated the contract. From September of 2014 through April of 2015,

Naugher spoke with agents of Venture, who were either in California or New York, between three

to eight times per week by email, telephone, and video conference.

On November 12, 2015, Venture directed its litigation attorney to send a formal demand to

FOJ seeking approximately $40,000 in unpaid fees. Three days later, on November 18, 2015, FOJ

filed this lawsuit alleging that Venture (1) breached the MSA by failing to draft the website code

in a way that met the terms of the MSA, and (2) committed fraud by representing to FOJ that the

website code it developed could support the anticipated number of users. FOJ effected service on

Venture in March of 2016, and Venture filed the motion to dismiss for lack of personal jurisdiction

soon thereafter. The Court stayed discovery pending its ruling on this jurisdictional motion.

## III.   Specific Personal Jurisdiction Analysis

To obtain personal jurisdiction over Venture in this diversity action, FOJ must show that

jurisdiction is legitimate under Oklahoma law. *TH Agric. & Nutrition, LLC v. Ace European Grp.*

*Ltd.*, 488 F.3d 1282, 1286 (10th Cir. 2007). Because the Oklahoma long-arm statute is construed

liberally to allow jurisdiction to the full extent permitted by the U.S. Constitution, *see* Okla. Stat.

tit. 12, § 2000(F), the Court may proceed directly to the constitutional issue.  FOJ does not contend this Court may exercise general personal jurisdiction over Venture based on its continuous and systematic contacts with Oklahoma.  Instead, FOJ relies exclusively on the doctrine of specific personal jurisdiction.

The specific personal jurisdiction inquiry has two steps.  First, the Court must determine if Venture has "minimum contacts" with Oklahoma such that it could reasonably anticipate being haled into an Oklahoma court. *TH Agric. & Nutrition*, 488 F.3d at 1287.  If Venture does have these minimum contacts, the Court also inquires whether its exercise of personal jurisdiction over Venture offends traditional notions of fair play and substantial justice.  *Id.*  The second inquiry "turns on whether the exercise of personal jurisdiction is 'reasonable' under the circumstances of [this] case." *Id.*  The two steps are interrelated on a sliding scale.  *Id.*  If FOJ makes a weak showing of contacts with Oklahoma, Venture may avoid being haled into an Oklahoma court with a lesser showing of unreasonableness.  If FOJ makes a strong showing of minimum contacts, Venture must make a stronger showing of unreasonableness in order to avoid personal jurisdiction.  *Id.*

### A.      Minimum Contacts

Venture may reasonably anticipate being subject to suit in Oklahoma if (1) Venture purposefully directed activities to residents of Oklahoma, and (2) this litigation resulted from alleged injuries that arise out of or relate to those activities.  *Id.*

#### 1.      Contract Claim

In contract cases, the inquiry is whether Venture "purposefully availed" itself of the privilege of conducting activities or consummating a transaction in Oklahoma.  *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008). Venture's contract with FOJ

cannot, standing alone, establish purposeful availment or minimum contacts. *TH Agric. & Nutrition*, 488 F.3d at 1288. To determine if a contractual relationship is sufficient, the Court must examine "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' course of dealing." *Id.* (internal questions omitted). In other words, the contract relied upon must itself have a substantial connection with Oklahoma. *Id.* The purposeful availment requirement is meant to ensure that Venture will not be subject to the laws of Oklahoma solely as the result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or third person. *Employers Mutual Casualty Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1160 (10th Cir. 2010).

Venture clearly availed itself of the privilege of conducting business and consummating a contract to provide services for an Oklahoma corporation, such that it could reasonably anticipate being sued in Oklahoma. Designing FOJ's website required Venture to communicate with FOJ repeatedly for a seven-month period in order to meet its client's specific and unique website needs. Venture was not performing a routine service that it provided in a similar or identical way with other clients across the United States. Instead, Venture had to engage in many meetings with FOJ over a long period of time in order to perform the service. Venture characterizes its work on the website as being performed exclusively in California and New York. However, this ignores the significant business relationship with an Oklahoma corporation necessitated by the MSA. Although Venture communicated with FOJ by phone, email, and video conference, Venture repeatedly reached out to Oklahoma in order to perform the service. Phone calls, letters, and emails provide evidence of an ongoing business relationship, and these types of "modern communications can eliminate the need

for physical presence." *AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1059 (10th Cir. 2008).

Further, the MSA had a substantial connection to Oklahoma because Venture entered into a contract to provide specialized services to an Oklahoma corporation, knowing that performing those services would require ongoing meetings and communications with an Oklahoma client. There was not one random or fortuitous event in Oklahoma, or unilateral activity by another entity in Oklahoma, that subjected Venture to suit in Oklahoma. Instead, Venture elected to accept FOJ as a client and perform high-level website production services for it. FOJ's contract claim arises out of Venture's performance of this service contract, and Venture could reasonably foresee that it could be haled into an Oklahoma court in conjunction with the MSA. *See Pharmacy Providers of Okla., Inc. v. Q Pharmacy, Inc.*, No. CIV-12-1405-C, 2013 WL 1688921, at *3 (W.D. Okla. Apr. 18, 2013) (holding that out of state defendant's "submission of numerous documents and multiple telephone calls and emails" to Oklahoma for a seventh-month period during a contractual relationship gave rise to specific personal jurisdiction over Oklahoma company's breach of contract claim).

Venture argues that the MSA being deemed executed in California and being governed by California law is "dispositive of the entire issue of specific jurisdiction" because its "only contact with the forum state was one lone agreement with a resident plaintiff – a single commercial relationship that by its very own terms was formed in California, not Oklahoma." (Reply in Support of Mot. to Dismiss 2.) This argument ignores the reality of the MSA, the relationship it created between the parties, and the extent of service-related activities Venture necessarily directed to Oklahoma in order to perform the contract.

### 2.   Tort Claim

The minimum contacts analysis for FOJ's tort claim requires inquiry as to (1) whether

Venture committed an intentional act; (2) whether Venture expressly aimed that act to Oklahoma;

and (3) whether Venture did do with knowledge that the brunt of the injury would be felt in

Oklahoma. *Dudnikov*, 514 F.3d at 1072; *see also Pharmacy Providers of Okla., Inc.*, 2013 WL

1688921, at *3.

> FOJ alleges:
>
> The Statement of Work detailed the fact that the website design was for a social
> media website, which, by its nature requires that the site support a significant number
> of users in order for the site to be functional and profitable.  During the design
> process, Plaintiff was assured that the site would handle a significant number of
> users.  After the termination of the agreement, it was discovered by a third-party
> website design company that the website source code was written in such a way that
> it would not support the anticipated number of users and would, in fact, either crash
> or become so slow as to be effectively worthless once a critical number of users was
> reached.

(Compl. ¶¶ 16-18.)  These allegations satisfy the three-part test above because the fraud was aimed

at FOJ in Oklahoma, and the brunt of injury flowing from the fraud would be felt by FOJ in

Oklahoma.  Thus, FOJ has also established minimum contacts for purpose of the tort claim.  *See*

*Pharmacy Providers of Okla., Inc.*, 2013 WL 1688921, at *3 (finding specific jurisdiction over tort

claim where fraudulent conduct – namely, the preparing and submitting false subscriptions -

occurred in Texas but was aimed at Oklahoma).

### B.   Reasonableness - Fair Play and Substantial Justice

FOJ has made a moderate to strong showing of minimum contacts, and its injuries flow

directly from Venture's contacts with Oklahoma.  Thus, Venture must make a fairly strong showing

that exercising jurisdiction over it would be unreasonable and would violate traditional notions of

fair play and substantial justice. *TH Agric. & Nutrition*, 488 F.3d at 1292. The Court assesses reasonableness by weighing five factors: (1) the burden on Venture, (2) Oklahoma's interest in resolving the dispute, (3) FOJ's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution, and (5) the shared interest of the states in furthering fundamental substantive social policies. *Id.*

### 1.      Burden on Venture

It is not a significant burden on Venture to litigate the case in Oklahoma. The additional expense of local counsel and travel expenses are not overly burdensome. Venture is a moderately sized corporation with operations in California and New York. This factor is neutral.

### 2.      Oklahoma's Interest in Resolving Dispute

Oklahoma has an important interest in providing a forum for residents to seek redress for conduct by out-of-state actors. *Id.* However, this interest is somewhat offset by the choice of law provision in the MSA requiring application of California law to the contract claim. *See id.* at 1294 ("While we do not deny that Kansas has an interest in this litigation, that interest is offset by the fact that Dutch law governs the contract."). Oklahoma law would likely apply to the tort claim. Thus, this factor does not weigh strongly in favor of either party. *See id.*

### 3.      FOJ's Interest in Receiving Convenient and Effective Relief

"The third factor evaluates whether the plaintiff may receive convenient and effective relief in another forum." *Id.* "This factor may weigh heavily in cases where a plaintiff's chances of recovery will be greatly diminished by forcing him to litigate in another forum because of that forum's laws or because the burden may be so overwhelming as to practically foreclose pursuit of the lawsuit." *Id.* FOJ has not shown that its chances of recovery will be diminished if it is forced

to litigate outside Oklahoma or that it would be an overwhelming burden.  This factor weighs in favor of Venture.

### 4.      Judicial System's Interest in Efficient Resolution

"The fourth factor asks whether the forum state is the most efficient place to litigate the dispute." *Id.* at 1296. "Key to this inquiry are the location of witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation." *Id.*

It seems the primary witnesses are evenly divided between California, Oklahoma, and New York.  The wrongs committed – both the breach of contract and fraudulent statements – are based on actions taken in California and/or New York but purposefully directed at Oklahoma.  California law governs the contract claim, and Oklahoma law governs the tort claim.  The Court finds this factor to be neutral.

### 5.      Effect on Other States' Fundamental Substantive Social Polices

The fifth factor focuses on whether the exercise of personal jurisdiction by Oklahoma affects the substantive social policy interests of other states or foreign nations – here, California. *Id.* at 1297.  This is a routine breach of contract suit, and rulings of the Court are not likely to impact fundamental substantive social policies of California and certainly will not impact its sovereignty. The Court finds this factor to be neutral.

On balance, Venture has failed to demonstrate that this Court's exercise of personal jurisdiction over it would offend fundamental notions of fair play and substantial justice. One factor weighs in favor of Venture but the rest are neutral.  Although California law will govern the contract claim, the Court finds no reason to conclude this Court's application of California law would result

in unfairness or injustice to Venture.  Thus, FOJ has made a fairly strong showing of minimum contacts and purposeful availment, while Venture has not made an adequate showing of unreasonableness to overcome the Court's exercise of jurisdiction.

## C.      Forum Selection Clause

In its response to the motion to dismiss, FOJ preemptively argued that the forum selection clause in the MSA is permissive rather than mandatory and therefore should not preclude the Court's exercise of jurisdiction.  FOJ further argued that a forum selection clause should be raised by motion to transfer venue and not a motion to dismiss.  In its reply, Venture clarified that "it was not relying on such clause in support of dismissal" and that FOJ's arguments related to such clause were "inapplicable and irrelevant."  (Reply in Support of Mot. to Dismiss 3.)  Therefore, the Court will not address the forum selection clause in its jurisdictional analysis.

## IV.     Conclusion

Venture's Amended Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 14) is DENIED.  Venture's original Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 13) is DENIED as moot.

The stay entered by the Court (Doc. 26) is STRICKEN.  The Scheduling Order (Doc. 21) is STRICKEN.  The parties are ordered to submit a Second Joint Status Report no later than one week from the date of this Order.

**SO ORDERED this 8th day of November, 2016.**

_____

**TERENCE C. KERN**
**United States District Judge**